Filed 8/14/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. C.M., Defendant and Appellant. | A175119 (City & County of San Francisco Super. Ct. No. JW23-6300) |

C.M. was declared a ward of the court and placed on home probation. As a condition of probation, the juvenile court granted the juvenile probation department the authority to add or remove an electronic monitoring device for up to 30 days without further court approval. The court order neither specified the grounds for placing the electronic monitoring device nor the grounds for having the device removed. The sole requirement was that the probation department provide 48 hours' notice to all counsel.

As the probation condition allows the probation department to impose or remove electronic monitoring without a judicial hearing and finding that such a change is necessary, it constitutes an impermissible delegation of the juvenile court's authority and responsibility. Accordingly, we reverse.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, all dates refer to 2025.

On November 2, C.M., then 16 years old, was arrested in San Mateo County for assaulting an older male. At the time, C.M. was on probation for a prior juvenile wardship adjudication in San Francisco.

*Wardship Petition*

On November 24, the San Mateo County District Attorney filed an amended juvenile wardship petition (Welf. & Inst. Code, § 602; all further undesignated statutory references are to this code) alleging C.M. committed felony assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), misdemeanor battery on an elder or dependent adult (*id.*, § 243.25), and misdemeanor battery (*id.*, § 242).

That same day, pursuant to a negotiated disposition, C.M. admitted he committed misdemeanor battery (Pen. Code, § 242), the remaining charges were dismissed, and the court sustained the amended petition.

*Transfer to San Francisco*

C.M. was found to be a San Francisco resident and the case was transferred to San Francisco for disposition.

On December 2, the San Francisco Juvenile Court (the court) held a transfer-in detention hearing and placed C.M. on home detention pending disposition. The record indicates that, although C.M. previously had an electronic monitoring device, the court released him on home detention without such a device.

*Disposition Hearing*

At the December 16 disposition hearing, the court redeclared C.M. a ward of the court and placed him on home probation in his mother's custody.

2

As one of the conditions of probation, "[t]he Juvenile Probation Department [was] given the right to add or remove the electronic monitoring device not to exceed 30 days without further court approval. All counsel shall be notified 48 hours in advance if the device is removed or added."

This condition was entered over C.M.'s objections, which included that the proposed condition impermissibly transfers a judicial function to the probation department, is unconstitutionally vague, and lacks sufficient due process protections as it does not provide for written notice and a hearing. The district attorney took the position that the condition was both standard and appropriate given C.M.'s prior failure to comply with the terms of his probation.

Regarding the objections, the court stated: "So as you know at our hearing that we had on December [2nd] . . . the court released you with no ankle monitor on. So that's something that I know was really important to you because of sports and I don't want to have to have Probation have to put it back on. [¶] I am going to give them the right to request a hearing with the court to have it added back on, but they'll be required to give 48 hours['] notice to the attorneys before the device is removed or added."

C.M.'s counsel sought clarification from the court, noting the court had stated it was only giving probation the right to request a hearing, but not to add the device prior to the hearing.

The court explained it was imposing the condition as proposed by the probation department: "The way that the condition reads here as I'm reading it is that, 'The Juvenile Probation Department is given the right to add or remove [an] electronic monitoring device not to exceed 30 days without further court approval. All counsel shall be notified 48 hours in advance if the device is removed or added.' [¶] 'In advance' being the key part of the

3

program in the condition as recommended by Probation and adopted by the court." The written terms and conditions of probation reflect this oral pronouncement.

## DISCUSSION

The question before us is whether the court improperly delegated its authority by giving the probation department the right to decide whether C.M. would be subject to electronic monitoring. The answer is yes.

## I. Applicable Legal Principles

When a juvenile court declares a minor a ward of the court under section 602 and places the minor under the supervision of a probation officer, the court " 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced . . .' (§ 730, subd. (b))," and the court has "significant flexibility to fashion its rehabilitative mandates and conditions." (*In re D.N.* (2022) 14 Cal.5th 202, 206 (*D.N.*).) Conditions that encroach on constitutional rights must be carefully tailored and reasonably related to the state's interest in rehabilitating delinquent youth. (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).) And any condition of probation " 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

There are clear statutory procedures pursuant to which the probation department, the prosecution, or any other interested person may seek to modify the terms of a minor's probation, such as the imposition or removal of electronic monitoring. All these procedures require formal notice and a

4

hearing before the probation order is modified.  (§§ 777, subds. (a) & (c), 778, subd. (a).)

If the probation department or the prosecution wish to change the terms of a minor's probation, including to address an alleged probation violation, they *must* petition the court to modify the disposition order under either section 777 (if seeking removal from the custody of a parent, guardian, relative, or friend and placement in more restrictive setting) or section 778 (for any other modification).  (*D.N.*, *supra*, 14 Cal.5th at p. 207.)  Any other interested person (such as a parent or the minor through a guardian) may also seek to change or set aside the disposition order pursuant to section 778.  (§ 778, subd. (a)(1).)

Therefore, it is for the juvenile court to determine violations and set conditions of probation.  But because the juvenile court is not in the role of supervising juvenile probationers on a day-to-day basis, it "may place significant supervisory discretion in the probation department's hands, at least when the department's decisions are subject to judicial review."  (*D.N.*, *supra*, 14 Cal.5th at p. 208.)

The "general rule [is] that a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer."  (*Victor L.*, *supra*, 182 Cal.App.4th at p. 919.)  So long as the supervisory discretion granted to the probation department is properly limited, it does not run afoul of the separation of powers doctrine (Cal. Const., art. III, § 3), which mandates that judicial powers may not be completely delegated to nonjudicial officers, including probation officers.  (*In re Travis J.* (2013) 222 Cal.App.4th 187, 194, fn. 3; see *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372 ["It is well settled that courts may not delegate the exercise of their discretion to probation officers."].)

5

Caselaw thus distinguishes between those conditions that permissibly delegate some degree of discretion to the probation department while the juvenile court retains ultimate authority over the minor's supervision and control, and those that improperly delegate judicial authority by "giv[ing] nonjudicial persons or institutions complete discretion over a significant aspect of the court's legal control of the minor." (*D.N.*, *supra*, 14 Cal.5th at p. 209; see *id*. at pp. 208–209 [collecting cases].)

For example, courts have found no improper delegation of authority where a condition permitted the probation department to supervise a minor's progress in a court-ordered custodial program in juvenile hall on a day-to-day basis, even though successful completion of the program could lead to an earlier release from commitment, provided the juvenile court retained the ultimate authority to determine whether the program was successfully completed. (*In re I.M.* (2020) 53 Cal.App.5th 929, 933–936; *In re J.C.* (2019) 33 Cal.App.5th 741, 747–748.)

On the other hand, courts have found impermissible a travel restriction unilaterally imposed by the probation department. (*In re Pedro Q.*, *supra*, 209 Cal.App.3d at pp. 1371–1372.) Also found impermissible was a condition that "vested absolute discretion in the probation officer to determine if and when a violation of probation occurred" during a minor's postcustody "aftercare" program, which could lead the minor to be returned to a correctional academy for 30 days. (*In re Gabriel T.* (2016) 3 Cal.App.5th 952, 960; see *id*. at pp. 958, 960–961.)

With these legal principles in mind, we turn to the merits of C.M.'s constitutional challenge to the probation condition, which we review de novo. (*In re J.B.* (2015) 242 Cal.App.4th 749, 754.)

## II. The Challenged Condition Impermissibly Delegates Judicial Authority to Probation

We conclude that deciding whether to impose electronic monitoring represents "a significant aspect of the court's legal control of the minor" and the condition in this case impermissibly delegates "complete discretion" to the probation department to make that determination without sufficient due process protections. (See *D.N., supra,* 14 Cal.5th at p. 209 [reviewing cases in which delegation was found improper because complete discretion was given to nonjudicial persons or institutions over a significant aspect of the court's legal control of the minor].)

### A. Significant Aspect of Control of the Minor

Electronic monitoring is defined as "technology used to identify, track, record, or otherwise monitor a minor's location or movement through electronic means." (§ 628.2, subd. (a)(2).) It provides the ability to know the minor's location at all times. (*In re R.V.* (2009) 171 Cal.App.4th 239, 247 [affirming monitoring provision that was imposed by the juvenile court and tailored to meet the minor's needs].)

We find electronic monitoring of wards of the juvenile court under section 602 (like C.M.), which is governed by section 628.2, to be a significant aspect of the court's legal control over minors. It is difficult to imagine how monitoring could be deemed an insignificant or incidental aspect of supervision as it allows the probation department (and ultimately the court) to know where the minor is at all times, is a tool for enforcing home detention, requires the physical presence of a monitor, and puts the minor at risk of immediate arrest for technical compliance errors (such as forgetting to charge the device).

7

Indeed, our Legislature has recognized the gravity of the imposition of electronic monitoring of minors.  Section 628.2 was implemented by Assembly Bill No. 2658 (2021–2022 Reg. Sess.) (Assembly Bill 2658).  (Stats. 2022, ch. 796, §§ 2–3).[1]  The Legislature stated its intent was "to recognize the potential harms of electronic monitoring for youth, and to subject the use of electronic monitoring to limitations and regular judicial review."  (*Id.*, § 1(e).)  It further found that electronic monitoring is "highly restrictive" and can "make it burdensome for youth to work, attend family events, run errands for family, participate in programming, play sports, or engage in any unscheduled activity, including medical and mental health appointments."  (*Id.*, § 1(b).)  The bill's sponsor indicated that, while electronic monitoring is "[o]ften viewed as an alternative to incarceration, this type of intensive surveillance is actually an alternative *form* of incarceration that often subjects youth to considerable harm."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2658 (2021–2022 Reg. Sess.) as amended June 15, 2022, p. 7.)

To ensure ongoing judicial review, section 628.2 prohibits electronic monitoring for more than 30 days without a court hearing: "[T]he court shall hold a hearing no less than once every 30 days to ensure that the minor does not remain on electronic monitoring for an unreasonable length of time." (§ 628.2, subd. (d).)  At such a hearing, the court must consider whether less restrictive conditions would achieve the court's rehabilitative purpose; if so, the statute requires removal of the electronic monitor or modification of the

---

[1] On our own motion, we take judicial notice of the legislative history of Assembly Bill 2658 (see *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1541, fn. 9), specifically the committee and floor analyses, as well as the bill's legislative findings, for use as an interpretive tool (*People v. Superior Court (Farley)* (2024) 100 Cal.App.5th 315, 331).

terms of electronic monitoring to achieve the less restrictive alternative. (*Ibid.*) It further provides that minors are entitled to custody credits applied toward the minor's maximum term of confinement for each day spent on electronic monitoring. (*Id.*, subd. (c).)

Section 628.2 requires the California Department of Justice to collect various data regarding the use of electronic monitoring, as specified in Penal Code section 13012.4 (implemented by the same Assembly Bill as section 628.2), which includes reporting the annual number of minors and the total number of days minors are placed on electronic monitoring. (§ 628.2, subd. (e); Pen. Code, § 13012.4, subd. (a)(1).) The report must also provide the reasons for placing or reinstating electronic monitoring. (Pen. Code, § 13012.4, subd. (a)(3).)

In sum, section 628.2 and Assembly Bill 2658 underscore that electronic monitoring is a highly restrictive form of supervision with significant potential harm to minors, thus warranting strict judicial oversight, transparency via stringent data reporting, and custody credit for every day a minor is subjected to it.

As we turn to the question of whether the probation order in this case was an impermissible delegation of judicial authority and responsibility, we note that nothing in section 628.2 or its legislative history states or implies that the imposition of electronic monitoring for *under* 30 days is permissible absent a court hearing and order.

## B. Impermissible Delegation of Judicial Authority

The probation condition before us fails to ensure that the juvenile court be the one to determine whether C.M. is subject to electronic monitoring. (See *Victor L.*, *supra*, 182 Cal.App.4th at p. 919.) Instead, it vests full

9

decision making authority in the probation department, subject only to providing counsel with 48 hours' notice. It is therefore impermissible.

*People v. Cruz* (2011) 197 Cal.App.4th 1306 (*Cruz*) is informative, despite arising in the adult probation context. *Cruz* found Penal Code section 1210.12, granting a county chief probation officer " 'sole discretion' " (consistent with the conditions of probation) to decide which persons are subject to electronic monitoring, violates the separation of powers doctrine. (*Cruz*, at pp. 1309–1311.) *Cruz* emphasized that the power to decide whether to impose electronic monitoring as a condition of probation rests with the court. (*Id*. at p. 1311.) While the probation condition here does not divest the juvenile court of authority in the same manner as Penal Code section 1210.12, it nonetheless gives the probation department full discretion to determine whether C.M. is subject to electronic monitoring for up to 30 days at a time, based on whatever criteria the probation department deems appropriate.

Contrary to the Attorney General's contention, *D.N.* does not support a finding that the condition in this case is permissible despite the authority being vested in probation. In *D.N.*, the California Supreme Court upheld a juvenile court order that authorized the probation department, in the event of an alleged violation of probation, to offer a minor the *option*, which the minor was free to reject, to perform up to 50 hours of community service in lieu of the department pursuing a formal court proceeding. (*D.N.*, *supra*, 14 Cal.5th at pp. 210–215.) The order also gave the probation department very limited discretionary power to set the details of the community service, which the minor could decline and instead return to court if he believed they were inappropriate for the alleged violation or wished to contest the allegation itself. (*Id*. at pp. 213–214.) Thus, the Supreme Court found the condition did

10

not deprive the minor of due process because the minor could opt to perform community service or to return to court, where he would be entitled to the formal notice and hearing process required by section 777 or 778. (*D.N.*, at p. 214.)

The order before us does not offer C.M. *any* choice. This critical difference is not negated by the commentary in *D.N.*, in dicta, that it was unclear whether the court "intended to authorize probation to offer additional [electronic] monitoring, as well as community service, as an option to clear an alleged violation" but "[t]o the extent it did, . . . there is no indication that the terms of that provision were any different from the community service provision—that is, an offer that the minor could accept or reject." (*D.N.*, *supra*, 14 Cal.5th at p. 215.)

Moreover, the condition does not provide C.M. *any* guarantee of judicial review of the probation officer's decision to impose electronic monitoring for up to 30 days. As C.M. correctly points out, this runs afoul of the statutory requirements in sections 777 and 778 requiring the probation department to petition the court and providing for notice and a hearing before implementing any change to a minor's probation terms. (§§ 777, subds. (a) & (c), 778, subd. (a); see *D.N.*, *supra*, 14 Cal.5th at p. 214 ["A juvenile court order that permitted the probation officer to make a finding of a probation violation and impose a sanction for the violation without providing the minor notice or an opportunity to be heard, and without a requirement that the People prove the violation by a preponderance of the evidence would, at the least, raise serious due process questions."].)

The Attorney General asserts that providing 48 hours' notice to counsel affords sufficient safeguards by giving C.M. "the opportunity to seek judicial intervention," noting that C.M. himself could file a petition to modify the

11

terms of probation. This argument flips the statutory scheme in sections 777 and 778 on its head; instead of requiring *the probation department* to file a petition for modification, it would put the onus on *C.M.* to request a hearing—and hope that he could be heard in the limited hours between the filing of a request and 48 hours after notice to counsel was provided. We will not endorse a condition that flies in the face of the statutory requirements and the due process they afford.

As stated by our Supreme Court in *D.N.*, an order permitting "the probation officer to find a violation of probation and impose a sanction without minor having notice, an opportunity to be heard, or any form of judicial process" raises constitutional concerns as to impermissibly delegating judicial power without sufficient due process. (*D.N.*, *supra*, 14 Cal.5th at p. 210.) That is precisely the type of order before us in this case. Deciding whether to impose electronic monitoring is a significant aspect of the court's legal control of the minor. And a probation condition that gives complete discretion to the probation department to make that determination without judicial oversight or the due process protections imbued in sections 777 and 778—even for a period of up to 30 days—is an impermissible delegation of judicial authority. (See *D.N.*, *supra*, 14 Cal.5th at p. 209.)

Compounding the impropriety of delegating the decision of whether to impose or remove electronic monitoring, the probation condition is devoid of guardrails. It does not specify what triggering conduct by C.M. would qualify for electronic monitoring—whether it must be a significant violation of probation, a mere technical one, or, for that matter, whether it must be a violation of probation at all. For example, the condition would permit the probation department to set some arbitrary standard for requiring electronic monitoring—in effect creating a new condition of probation, such as getting

12

certain grades in school.  Therefore, the condition is also impermissibly vague as it does not provide fair warning to C.M. as to what is required of him to avoid being subject to electronic monitoring.  (See *In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)[2]

## DISPOSITION

The December 16, 2025 disposition order is reversed.  The case is remanded with instructions for the juvenile court to amend or remove the electronic monitoring condition consistent with this opinion.


PETROU, J.

WE CONCUR:


TUCHER, P. J.

RODRÍGUEZ, J.


A175119 / *In re C.M.*

---

[2] We do not reach the question of whether the probation condition would be permissible if it contained specific criteria for placing electronic monitoring on C.M. and/or some degree of judicial oversight.  However, we note that the condition's primary shortcoming is the failure to provide due process or judicial oversight over a judicial function delegated to a nonjudicial party, which is only amplified by its vagueness.

Trial Court: City and County of San Francisco Superior Court

Trial Judge: Hon. Anne Costin

Counsel:

Sarah M. Javaheri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Katie L. Stowe, Deputy Attorney General, and Alisha M. Carlile, Deputy Attorney General, for Plaintiff and Respondent.